*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSE ADOLFO GONZALEZ-BARCENA,

Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 348429
Ingham Circuit Court
LC No. 18-000193-FH

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with person under 13 years of age). The trial court sentenced defendant to concurrent prison terms of 66 to 180 months and ordered defendant to pay $1,639.50 in attorney's fees. We affirm defendant's convictions and sentences, but vacate the portion of the judgment of sentence requiring defendant to pay attorney's fees and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2017, defendant's stepdaughter, KA, disclosed that defendant had sexually abused her from early childhood until she was fifteen years old. Defendant was initially charged with five counts of CSC-II. Counts I through IV alleged that defendant had touched KA's genital area or breasts when she was less than 13 years old, and Count V alleged that defendant made KA touch his penis when she was more than 13 but less than 16 years of age. At defendant's preliminary examination, the district court dismissed Counts II through V, stating that it had "some grave reservations" about the credibility of KA's testimony; it bound defendant over on Count I. After the prosecution moved to amend the information, the trial court reinstated Count II because there was evidence that defendant had touched two separate protected areas, i.e., KA's genitals and breasts.

Before trial, the prosecution filed a notice of intent to admit evidence under MCL 768.27a. The prosecution sought to introduce evidence that defendant had committed other acts of CSC-II against his former stepdaughter, JK, as well as evidence that defendant had committed another act

-1-

of CSC-II against KA by forcing her to touch his penis, i.e., the act underlying the now-dismissed Count V. Defendant did not object. The prosecution also filed a disclosure of expert witness testimony under MCR 6.201(A)(3), stating that it intended to call Thomas Cottrell (Cottrell) at trial to testify as an expert "in the field of child sexual abuse and the dynamics surround[ing] child sexually abusive episodes." Defendant did not object.

Five days before trial, the trial court sent an e-mail to confirm that defendant was not objecting to the admission of the other-acts evidence. On the evening before trial, defense counsel responded in an email that stated:

> Reviewing for trial tomorrow, although it is probably clear, since Count 5 has been dismissed, no questions can be asked in regards to any incidents which occurred after the age of thirteen, including, but not limited to, the evidence presented at the prelim regarding Count 5, as both Judge Clarke and Judge Colette found there was no probable cause to bindover on that issue.

At trial, defense counsel clarified that defendant was not objecting to the introduction of JK's testimony, but expressed concern that the other-acts evidence relating to KA would confuse the jury. Nonetheless, defense counsel agreed that a limiting instruction "would be fine."

KA testified at trial that defendant had touched her breasts and vagina, while her mother was at work, almost every day from the time she was approximately four years old until she was approximately 15 years old. KA further testified that when she was 13 years old, defendant made her touch his penis, and that she and defendant frequently argued about topics relating to the lack of freedom KA had as a teenager. KA also testified that she did not initially tell her mother that defendant had sexually abused her because she was afraid that her mother would not believe her and because defendant physically abused her.

JK also testified at trial that defendant sexually abused her when she was 11 or 12 years old. Cottrell testified as an expert "in the field of child sexual abuse and the dynamics of child sexually abusive episodes." He testified generally about the reasons why a victim of child sexual abuse might delay disclosure.

Before the jury began its deliberations, the trial court gave a limiting instruction regarding JK's and KA's testimony regarding acts for which defendant was not charged:

> The Prosecution has introduced evidence of claimed acts of sexual misconduct by the Defendant with [KA] and [JK] for which he is not on trial.
>
> Before you may consider such alleged acts as evidence against the Defendant, you must first find that the Defendant actually committed those acts. If you find that the Defendant did commit those acts, you may consider them in deciding if the Defendant committed the offenses for which he is now on trial.
>
> You must not convict the Defendant here solely because you think he is guilty of other bad conduct. The evidence must convince you beyond a reasonable

doubt that the Defendant committed the crime of [CSC-II], or you must find him not guilty.

The jury convicted defendant as described. At sentencing, the trial court ordered defendant to pay $1,639.50 in attorney's fees and entered a remittance order under MCL 769.1*l* requiring the Department of Corrections to collect 50% of funds received by defendant in excess of $50 each month. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his counsel provided ineffective assistance by waiving any objection to the admission of other-acts evidence, by failing to request a *Daubert*[1] hearing to contest the admissibility of Cottrell's testimony, and by failing to object to Cottrell's testimony. We disagree.

A claim of ineffective assistance of counsel presents a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). There is a strong presumption that counsel's performance was sound trial strategy. *Lockett*, 295 Mich App at 187. Failing to raise a meritless argument or a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because defendant did not move the trial court for a new trial or a *Ginther*[2] hearing on the issue of his counsel's effectiveness, our review is limited to mistakes that are apparent on the record. *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018); *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

## A. ADMISSION OF OTHER-ACTS EVIDENCE

Defendant first argues that his counsel provided ineffective assistance by failing to object to the admission of JK's and KA's testimony concerning additional acts of sexual abuse. We disagree. We note at the outset that it appears that defense counsel did raise an objection to KA's testimony before trial, but was eventually satisfied that his concerns would be adequately addressed by way of a limiting instruction. Nonetheless, to the extent that defendant argues that his counsel performed ineffectively by declining to renew that objection, or by withdrawing it in favor of a limiting instruction, we disagree.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character. MRE 404(b). However, when a

---

[1] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-3-

defendant is charged with a sexual offense against a minor, the admissibility of evidence regarding the commission of other uncharged sexual offenses against a minor is governed by MCL 768.27a, which provides:

> (1) Notwithstanding [MCL 768.27, which generally permits the introduction of other-acts evidence for certain purposes and is the statutory basis for MRE 404(b)], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

> (2) As used in this section:

> (a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

> (b) "Minor" means an individual less than 18 years of age.

Therefore, "MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). CSC-II is among the "listed offenses" set forth in MCL 28.722. If MCL 768.27a applies, "it supersedes MRE 404(b)." *People v Watkins*, 491 Mich 450, 477; 818 NW2d 296 (2012).

In this case, JK testified that on one occasion when she was getting out of the shower at the age of 11 or 12 years, defendant touched her genitals. JK also indicated that defendant made her put her hand on his penis. Therefore, there was evidence that defendant committed CSC-II against JK by (1) engaging in sexual contact, (2) with a person under 13 years of age. *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). Further, KA testified, apart from the acts that were charged in this case, that when she was 13 years old, defendant made her touch his penis. Therefore, there was also evidence that defendant committed CSC-II against KA by (1) engaging in sexual contact, (2) with a person at least 13 years of age but less than 16 years of age, and (3) both people are members of the same household. MCL 750.520c(1)(b). Accordingly, the other-acts evidence was admissible under MCL 768.27a. Further, the evidence that defendant had sexually assaulted JK (who then was a minor female stepdaughter with whom he lived), as well as KA (also then his minor, female stepdaughter) in a similar manner, was highly probative and relevant to the offenses with which he was charged, because it tended to show that defendant sexually assaulted KA. See *Duenaz*, 306 Mich App at 100.

However, evidence that is admissible under MCL 768.27a is still subject to MRE 403. *Watkins*, 491 Mich at 496. MRE 403 provides that relevant evidence "may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice[.]" "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. A court may consider the following nonexhaustive factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

We conclude that the *Watkins* factors weigh in favor of admissibility in this case. The other acts and the acts charged in this case are similar. KA testified that defendant sexually abused her while her mother was at work. Although JK did not testify that defendant touched her breasts, defendant sexually abused her by touching her vagina while she was in a vulnerable position in the home, i.e., getting out of the shower or alone without another adult present. The incident with JK occurred in close temporal proximity to when defendant began sexually abusing KA. Further, given that KA testified that defendant sexually abused her almost every day, the other incident with KA likely also occurred in close temporal proximity to the acts charged. Although the other acts against JK and KA were only alleged as single incidents, there was no suggestion of an intervening act that might have rendered this evidence less relevant. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). And because there was no physical evidence or eyewitness testimony to directly support or contradict KA's testimony, evidence beyond KA's testimony was relevant to resolving the issue. Further, although defendant contends that KA's testimony was not credible, it was the role of the jury, rather than the trial court, to determine KA's credibility; defense counsel was free to explore weaknesses in KA's testimony on cross-examination. See *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

Additionally, the trial court gave a limiting instruction to the jurors, indicating that they were not to convict defendant merely because they believed he was guilty of other bad conduct. Absent evidence to the contrary, jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

The challenged evidence was admissible under MCL 768.27a and the probative value of admitting the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Moreover, the trial court gave a limiting instruction to the jury regarding the proper use of such evidence. Therefore, counsel did not provide ineffective assistance failing to raise a meritless objection. See *Ericksen*, 288 Mich App at 201.

## B. EXPERT WITNESS TESTIMONY

Defendant also argues that his counsel provided ineffective assistance by failing to request a *Daubert* hearing to contest the admissibility of Cottrell's testimony. We disagree.

"Generally, expert testimony is not admissible unless the trial court first determines that the expert's theories, methodology, and underlying data are reliable under MRE 702, which in turn

incorporates the standards of reliability that the United States Supreme Court established in [*Daubert*]." *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 10.

MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"An evidentiary hearing under MRE 702 . . . is merely a *threshold* inquiry to ensure that the trier of fact is not called on to rely in whole or in part on an expert opinion that is only masquerading as science." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 732 NW2d 578 (2007). The trial court is to inquire into whether the expert's opinion "is rationally derived from a sound foundation," and not whether the expert's opinion is "necessarily correct or universally accepted." *Id*.

In this case, the record is clear that a *Daubert* hearing was not necessary. Attached to its disclosure of expert witness testimony, the prosecution included Cottrell's curriculum vitae, along with a letter from Cottrell detailing the testimony he was prepared to offer based on his training and experience. In particular, Cottrell received his bachelor's degree in child psychology and his master's degree in social work with a focus on interpersonal practice. Cottrell had also "worked in the field of child sexual abuse since 1983 in various positions at the YWCA West Central Michigan," where he "supervised the counseling of over 4000 cases of child sexual abuse, both familial and non-familial." Behavioral science, and more particularly, the area of child sexual abuse, are both recognized fields of practice. See *People v Beckley*, 434 Mich 691, 718; 465 NW2d 391 (1990). The purpose of expert testimony such as Cottrell's is to aid the jury in determining whether a "the behavior of this particular victim is common to the class of reported child abuse victims." *Id*. at 726. Based on Cottrell's extensive background in these areas, the trial court could readily conclude, as indeed many trial courts had previously concluded, that Cottrell's testimony was rationally derived from a sound foundation. See *Chapin v A & L Parts, Inc*, 274 Mich App at 139. Defense counsel did not provide ineffective assistance by failing to raise a meritless objection to Cottrell's qualifications without a *Daubert* hearing. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that defense counsel was ineffective in failing to object to Cottrell's testimony during trial. Again, we disagree. Defendant argues that Cottrell did not cite specific sources for some of the statistics he recited at trial, such as his claims that "at least 90 percent of children who are sexually abused have a relationship with their assailant," that "less than 50 percent of child abuse is actually disclosed during childhood," and that "[m]ost children who testify, particularly adolescents, tend to be relatively blunted in their presentation either because they simply want to get through it, or for some children they've learned to simply deaden their emotions in order to survive." However, an expert witness's failure to identify any medical or scientific literature in support of his or her testimony does not necessarily imply that the expert's

opinion is unreliable or inadmissible. See *People v Unger*, 278 Mich App 210, 220; 749 NW2d 272 (2008). Further, defense counsel may have wished, strategically, to avoid strengthening the impact of Cottrell's testimony by asking him to cite specific sources for his statements. In any event, defendant has not demonstrated prejudice from defense counsel's failure to inquire into the sources of Cottrell's claims concerning broad trends or characteristics of child sexual abuse victims generally. Defendant has neither overcome the presumption of sound trial strategy nor demonstrated prejudice in his counsel's failure to further inquire into the source of Cottrell's statistics. *Trakhtenberg*, 493 Mich at 51.

Defendant also argues that Cottrell improperly vouched for KA's credibility, and that defense counsel was ineffective in failing to object to Cottrell's testimony on that basis. We disagree. In *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), our Supreme Court, explaining the admissibility of expert testimony in child sexual abuse cases, held:

> In these consolidated cases, we are asked to revisit our decision in *People v Beckley*, 434 Mich 691; 465 NW2d 391 (1990), and determine the proper scope of expert testimony in childhood sexual abuse cases. The question that arises in such cases is how a trial court must limit the testimony of experts while crafting a fair and equitable solution to the credibility contests that inevitably arise. As a threshold matter, we reaffirm our holding in *Beckley* that (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty. However, we clarify our decision in *Beckley* and now hold that (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id*. at 352-353.]

Our Supreme Court applied these principles in *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019), a case also involving Cottrell's expert testimony, and held:

> We conclude that Thorpe has shown that it is more probable than not that a different outcome would have resulted without Cottrell's testimony that children lie about sexual abuse 2% to 4% of the time. In *Peterson*, this Court observed that nearly identical testimony allowed "the experts in that case [to] improperly vouch[] for the veracity of the child victim." Here, not only did Cottrell opine that only 2% to 4% of children lie about sexual abuse, but he also identified only two specific scenarios in his experience when children might lie, neither of which applies in this case. As a result, although he did not actually say it, one might reasonably conclude on the basis of Cottrell's testimony that there was a 0% chance BG had lied about sexual abuse. In so doing, Cottrell for all intents and purposes vouched for BG's credibility. Furthermore, the prosecution's closing argument on rebuttal highlighted this improper evidence at a pivotal juncture at trial[.]

* * *

Thorpe's trial was a true credibility contest. There was no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements. The prosecution's case consisted of BG's allegations, testimony by her mother regarding BG's disclosure of the alleged abuse and behavior throughout the summer and fall of 2012, and Cottrell's expert testimony. Thorpe testified in his own defense and denied the allegations. Additionally, Kimberly testified about other reasons for BG's behavior during the summer and fall of 2012; namely, that her mother had started a new relationship and become pregnant and that Thorpe had decided to no longer have parenting time with BG. Because the trial turned on the jury's assessment of BG's credibility, the improperly admitted testimony wherein Cottrell vouched for BG's credibility likely affected the jury's ultimate decision. Under these circumstances, we conclude that Thorpe has shown that it is more probable than not that a different outcome would have resulted without Cottrell's improper testimony. [*Id*. at 259-260 (first and second alterations in original).]

In this case, Cottrell's testimony was significantly distinguishable from his testimony in *Thorpe*, because he never explicitly or implicitly addressed whether children lie about sexual abuse, and instead only explained why children commonly delay reporting incidents of sexual abuse. Moreover, Cottrell agreed with defense counsel on cross-examination that there was "nothing specific to this case" in his testimony. And the trial court instructed the jury that Cottrell's testimony could only be used for the limited purpose of deciding whether KA's conduct after the alleged crime was "consistent with those of sexually abused children" and specifically told the jury that Cottrell's testimony could not be considered an opinion on whether other witnesses were telling the truth. Therefore, a juror could not have reasonably concluded that Cottrell was specifically vouching for KA's credibility. Cottrell avoided the problematic aspects of his testimony in *Thorpe*. Therefore, defense counsel did not provide ineffective assistance by failing to object to Cottrell's testimony, because any objection would have been meritless. See *Ericksen*, 288 Mich App at 201.

III. PROSECUTORIAL MISCONDUCT

Defendant also argues that the prosecution improperly vouched for KA's credibility, mischaracterized Cottrell's testimony, and shifted the burden of proof during closing and rebuttal argument. We disagree. To preserve an issue regarding prosecutorial misconduct, "a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), lv den 489 Mich 897 (2011). Defendant neither objected to the prosecution's statements nor requested a curative instruction. Therefore, this issue is unpreserved for appellate review. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). An error affects substantial rights when it is prejudicial, meaning "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App

58, 64; 732 NW2d 546 (2007). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* The prosecution cannot vouch for the credibility of prosecution witnesses to the extent that the prosecution "has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). "[A] prosecutor may not argue facts not in evidence or mischaracterize the evidence presented . . . ." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). If an expert witness testifies in a child sexual abuse case, "[t]he prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case." *Peterson*, 450 Mich at 373.

During his opening statement in this case, defense counsel stated that this case was "about a rebellious, out-of-control teenager and a . . . strict stepfather from Cuba" and that the evidence would show that KA "wanted [defendant] out of the house so she could have more freedom." In later responding to defense counsel's theory during closing arguments, the prosecution argued in relevant part:

> But the defense attorney wants you to believe this is just a case about a rebellious teenager and strict stepfather. She wanted the Defendant out of the house so she could have more freedom. So she fabricated this whole story. Let's talk for a minute about what you have to believe for that story to make sense, for that story, that suggestion, to create a reasonable doubt as to the Defendant's guilt.
>
> You really have to believe that [Alvarez] is insanely vindictive, kind of an evil genius who does not care at all about her mother and is, by the way, pretty lucky. You have to believe that the basis for all of this is strict parenting, not letting her see a boyfriend, disagreements over clothing, disagreements over taking a car, pretty typical teenage stuff.
>
> Aside from maybe adding the jealous situation in Cuba and the prostitute name calling, these are the type of things that teenagers butt heads with their fathers about, their biological fathers, their stepfathers, their foster fathers all across America. All across the world, really, every single day across different cultures, across different races, across different socioeconomic classes, these are the things that create friction between teenagers and their parents.
>
> You have to believe that that was enough to set [Alvarez] off into a lie that she has maintained for a year and a half. That she went through an entire police investigation. She went through being interviewed by a detective. She went through testifying at a preliminary examination last February. She went through coming into court and testifying in front of a jury of 13 adults because of that; because of those typical teenager-father issues.

You have to believe that [Alvarez], at age sixteen when she disclosed and seventeen now when she testified, knew the things that Thomas Cottrell knows from his decades of education, decades of research of working with children who have been victims of sexual crimes and now is—he's actually training others on this subject matter.

You have to know that [Alvarez]—you have to believe that [Alvarez] knew these things to be true. She knew that the information about delayed disclosure. That she could get away with making up something with a delay in it. She knew about grooming and the things that Thomas Cottrell discusses. She knew by adding a threat she could make this a better case. She knew that by talking about physical violence, she could make this a better case to fit what the experts know.

That she knew that victims try to maintain normalcy so she could say, "Yes, everything was normal." And she knew about disclosures, and she knew about all of those things that Thomas Cottrell testified to.

You really have to believe that she was kind of some kind of sociopath who did maybe some research to figure out how to frame him consistent with what the experts would say.

\* \* \*

And, finally, you have to believe that [Alvarez] is absolutely heartless when it comes to her mother and her brother. That having a boyfriend, wearing skimpy clothes, staying out late was worth breaking up her mother's relationship, which was essentially a marriage, and forcing her brother's father out of the home.

Defendant now argues that the prosecution improperly shifted the burden of proof and vouched for KA's credibility when it stated that "for [defendant's] story to make sense," the jury would have to believe that KA was "insanely vindictive" and an "evil genius" who did not care about her mother, and also when the prosecution made additional statements during its rebuttal argument that the jury would have to believe that KA was "making up a bold faced [sic] lie," which would require "true evilness on her part." We disagree; in context, the prosecution was responding to defense counsel's theory by arguing the facts and reasonable inferences, and was not required to confine its argument to the blandest possible terms. *Dobek*, 274 Mich App at 64, 76. The prosecution did not imply that it had some special knowledge of KA's credibility. *Bahoda*, 448 Mich at 276. Further, the prosecution's comments cannot be reasonably interpreted as requiring the jury to find that KA was insanely vindictive, an evil genius, or truly evil in order to acquit defendant. *Fyda*, 288 Mich App at 463-464. The prosecution was permitted to discuss the weaknesses in defendant's case, and by doing so it did not improperly shift the burden of proof. See *People v Fields*, 450 Mich 94, 112; 538 NW2d 356 (1995). Moreover, the trial court instructed the jury that the prosecution had the burden of proof, and it is presumed that jurors follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

With regard to Cottrell's testimony, Cottrell testified that there is a common misconception that children immediately report incidents of sexual abuse but that children may in fact delay

-10-

reporting to protect "the integrity of the family." Cottrell also testified that children may delay reporting if the perpetrator uses "grooming" techniques, such as threats. During closing arguments, and again in response to defendant's theory of the case that KA had fabricated her story because she wanted to be free of an overbearing stepfather, the prosecution argued essentially that KA's behavior was more reasonably explained by the fact that she *was* a child sexual abuse victim, rather than that she had concocted an elaborate lie which she told to numerous professionals and law enforcement officers. Contrary to defendant's assertion, the prosecution did not mischaracterize Cottrell's testimony or suggest that the defense had to prove that KA "was a cruel, heartless, sociopathic teen" who "researched the patterns of sexual abusers." Rather, the prosecution argued for reasonable inferences to be drawn from Cottrell's testimony and compared his testimony to the facts of this case. See *Peterson*, 450 Mich at 373.

We find defendant's prosecutorial-misconduct argument to be without merit. Relatedly, his counsel did not provide ineffective assistance by failing to raise a meritless objection to the prosecution's statements during closing arguments. *Ericksen*, 288 Mich App at 201.

## IV. ATTORNEY'S FEES

Defendant argues that this Court must remand to correct the judgment of sentence because the trial court's assessment of attorney's fees was based on "inaccurate information." We agree, albeit for a different reason.

Defendant failed to object when the trial court ordered him to pay attorney's fees. See *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Therefore, we review defendant's argument for plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

The trial court must have the statutory authority to assess costs, fines, or fees against a defendant. *People v Lloyd*, 284 Mich App 703, 707; 774 NW2d 347 (2009). MCL 769.1k and MCL 769.1*l* authorize trial courts "to both impose a fee for a court-appointed attorney as part of a defendant's sentence and to enforce that imposition against an imprisoned defendant." *People v Jackson*, 483 Mich 271, 283; 769 NW2d 630 (2009). MCL 769.1k provides, in relevant part:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:
>
> * * *
>
> (b) The court may impose any or all of the following:
>
> * * *
>
> (*iii*) Until October 17, 2020, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

-11-

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

(*iv*) The expenses of providing legal assistance to the defendant.

In *People v Lewis*, 503 Mich 162, 163; 926 NW2d 796 (2018), the Michigan Supreme Court addressed whether a sentencing court could impose attorney's fees under MCL 769.1k(1)(b)(*iv*) "without first making findings of fact in support of that amount." The *Lewis* Court held that "the trial court was required to determine the cost of providing legal assistance to [the] defendant pursuant to MCL 769.1k(1)(b)(*iv*)." *Id*. at 168. The *Lewis* Court reasoned that "the costs of providing legal assistance to a defendant are logically distinguishable" from the costs listed in MCL 769.1k(1)(b)(*iii*). *Id*. at 167-168. Further, the costs listed in MCL 769.1k(1)(b)(*iii*) "are all fairly standard expenses for a court's operations, tend not to vary significantly by case, and are not affected by any particular case." *Id*. at 168. "In contrast, attorney fees can vary greatly among defendants depending on a variety of circumstances, such as the nature and number of the criminal charges." *Id*.

In this case, the trial court did not make any findings regarding the cost of legal representation provided to defendant. Although the trial court had the authority to assess attorney's fees at sentencing under MCL 769.1k(1)(b)(*iv*), it was required to make findings regarding the costs of providing legal assistance to defendant, which may include the circumstances of the case and the nature and number of the criminal charges. See *id*. at 167-168. Therefore, the trial court erred by assessing $1,639.50 in attorney's fees without first making the proper findings regarding the cost of legal assistance provided to defendant. See *id*. This was plain error that affected defendant's substantial rights. *Carines*, 460 Mich at 763. Accordingly, we must remand so that the trial court may "support its findings regarding the cost of legal assistance provided to defendant." *Lewis*, 503 Mich at 168.

We affirm defendant's convictions and sentences, but vacate the portion of the judgment of sentence requiring defendant to pay attorney's fees and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel

-12-